# United States Court of Appeals
# for the Fifth Circuit

———————

No. 25-30265
Summary Calendar

———————

United States Court of Appeals
Fifth Circuit

**FILED**

September 24, 2025

Lyle W. Cayce
Clerk

Paul Reed,

*Plaintiff—Appellant*,

*versus*

United States of America,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:20-CV-1354

———————————————————

Before Davis, Wilson, and Douglas, *Circuit Judges*.

Per Curiam:[*]

On August 14, 2017, Plaintiff-Appellant Paul Reed was riding shotgun in a friend's car when a postal-service long-life vehicle backed into the car's front passenger door. Reed sued Defendant-Appellee the United States, alleging injuries to his neck, back, and hip. After a bench trial, the district court entered an award of $105,152.53 in Reed's favor. Reed contends the

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

award is abusively low and challenges certain findings of fact and evidentiary rulings by the district court. In accordance with the deference afforded the district court in this situation, we AFFIRM.

Reed was involved in three traffic accidents between 2004 and 2016. The first in 2004 necessitated cervical injections and back and knee surgery. A 2012 accident caused whiplash in Reed's neck and aggravated his back pain. Medical providers at the time believed Reed's prognosis was poor, absent surgery. A 2016 accident further aggravated Reed's chronic neck and back pain, and a treating chiropractor opined Reed would have to contend with long-range changes and symptoms going forward. In June 2017, Reed applied for supplemental security income, claiming his neck, back, and derivative stomach pain was so debilitating that he could no longer work.

Two months later, on August 14, 2017, Reed was riding in the passenger seat of his friend Donald Berry's Chevrolet Malibu, while Berry drove. Berry turned into the largely empty parking lot of Reed's apartment complex in Opelousas, Louisiana, and started to reverse into a parking slot. Around the same time, Amanda Campbell, a U.S. Postal Service mail carrier, began to reverse out of the lot in her long-life vehicle (LLV). The vehicles' paths crossed and the rear of the LLV struck the Malibu's front passenger door. The LLV sustained no visible damage; the Malibu's door had to be replaced at a cost of $600. Neither Berry nor Campbell reported an injury. Reed, however, underwent physical therapy; then lumbar, cervical, and hip-joint injections; and, finally, three different surgeries—a cervical fusion, implantation of a spinal-cord stimulator, and a hip-joint fusion.

No. 25-30265

After the U.S. Postal Service denied his claim, Reed timely sued under the Federal Tort Claims Act,[1] and a bench trial was held on September 12, 2023. Reed and Berry testified at trial, as did Reed's downstairs neighbor, who witnessed the accident and observed Reed's mobility in the following months. Three of Reed's medical providers—Drs. Michael Haydel, Derek Metoyer, and George Williams—appeared by deposition. The government's expert, Dr. Neil Romero, appeared live and testified that Reed's extensive treatments were attributable to chronic, preexisting conditions, not the accident. The parties submitted post-trial briefs, along with proposed findings of fact and conclusions of law, in February 2024. The district court issued its Reasons for Judgment on March 5, 2025.

There, the district court found that Reed had carried his burden of proving the accident aggravated his preexisting cervical and lumbar conditions and caused a new hip injury. But it rejected Reed's claim that the accident caused new injuries to his neck and back and, as a result, denied compensation for Reed's cervical and lumbar treatments beyond physical therapy. The court awarded special damages, consisting of Reed's initial post-accident medical evaluations ($5,311.00); physical therapy for the aggravation of his neck and back conditions ($5,955.00); and evaluations, injections, surgery, and physical therapy for his hip injury ($88,951.90). For general damages, the court surveyed cases the parties provided and others it independently identified as relevant, and rendered a $50,000 award. It also allocated 70% of the fault for the accident to Campbell (the LLV's driver) and 30% to Berry (in whose car Reed was a passenger but whom Reed did not

---

[1] *See* 28 U.S.C. § 2401(b). The government's liability is determined in accordance with Louisiana law since that's "where the act or omission occurred." *Id*. § 1346(b).

No. 25-30265

sue).[2] It then discounted the total award by 30% to exclude the amount attributable to Berry's fault,[3] and entered judgment against the United States in the amount of $105,152.53, plus costs and post-judgment interest. Reed timely appealed.

Reed assigns nine errors on appeal. Seven of these dispute the district court's findings of fact—primarily those on fault allocation, causation, and the damage awards derived from those findings. After our clear-error review,[4] we conclude the district court fairly evaluated the evidence and that its findings are "plausible in light of the record viewed in its entirety."[5]

We further find the district court did not abuse its discretion when it admitted Dr. Romero's testimony in evidence.[6] "Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."[7] In a bench trial, a district court acts within its discretion in admitting even borderline expert

---

[2] *See* La. Civ. Code art. 2323 (requiring allocation of fault of all persons causing or contributing to an injury).

[3] *See id.* art. 2324 ("A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise . . . , or that the other person's identity is not known or reasonably ascertainable.").

[4] *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020) (per curiam) (stating clear-error standard applies to fact findings, including liability, apportionment of fault, and damages); *see* Fed. R. Civ. P. 52(a)(6).

[5] *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74 (1985).

[6] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998) (stating "standard for reviewing a district court's admission or exclusion of expert testimony" is for abuse of discretion).

[7] *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).

No. 25-30265

testimony and, then, weighing that testimony as factfinder. The district court did not breach those bounds of discretion here; nor did it clearly err in crediting Dr. Romero's testimony.[8]

This case presented challenging factual disputes, which were the district court's prerogative to resolve. It did so thoroughly and well within the confines of our clear-error review. For these reasons and those provided in the district court's Reasons for Judgment, we AFFIRM the district court's Final Judgment dated April 8, 2025.

---

[8] *See Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (stating credibility determinations require "even 'greater deference'" (quoting *In re Luhr Bros.*, 157 F.3d 333, 338 (5th Cir. 1998))).